Revised John P. Lynch, Esq. Informal Opinion Owego-Apalachin Central No. 95-10 School District P. O. Box 660 Binghamton, N Y 13902-0660
Dear Mr. Lynch:
You have asked whether conflicts of interests would occur under two situations in your school district in light of the Attorney General's Informal Opinion No. 87-18.
The first situation involves a school ski club chaperone who is a member of the teaching staff separately paid to chaperone students under the existing contract.
The second situation concerns a teacher who will be chaperoning a trip to the rain forests of Honduras. While in Honduras, the teacher will receive no additional compensation from the school district for chaperoning the trip. The trip has been approved by the board of education through formal action and the student participants have been selected by the board.
You have asked that we evaluate several different scenarios. Under the first scenario, the chaperone would be responsible for arranging trips to the ski area, including the selection of the ski area. In addition to his or her salary, the chaperone independently can solicit emoluments from the ski area such as free lift tickets or free or discounted services in the ski shop. Similarly, the chaperone for the Honduras trip would be responsible for making arrangements and in choosing the tour organizer. The chaperone can negotiate independently with the tour organizer for his or her receipt of a free trip.
Informal Opinion No. 87-18 evaluated a part-time senior citizens leader whose job description included the development of recreational programs for senior citizens. The leader planned a cruise for senior citizens which was also open to friends and relatives of the senior citizens. The town did not pay the leader for time spent on the cruise. The leader selected the travel agency responsible for planning the cruise and was offered a free trip from the travel agency if a sufficient number of persons made reservations.
In our view, the first scenario you have described creates conflicts of interests. The responsibility of both employees is to select, respectively, the best ski trip and the best trip to Honduras for the students taking into consideration both quality and cost. As we concluded in Informal Opinion No. 87-18, where the travel agency sponsoring these trips offers a free trip to the leader or where the ski area offers lift tickets or ski shop items, an appearance of impropriety results. It may reasonably appear to the public that the leader's selection of the particular travel agency or ski area was influenced by the offering of a free trip or free services. The fact that the teacher leading the trip to Honduras is not being paid during the trip makes no difference. The teacher is acting as the official chaperone for a board of education sponsored student trip. Thus, his or her activities in planning and attending the trip must be solely in the students' interests.
Additionally, as in Informal Opinion No. 87-18, we believe, assuming monetary amounts are reached, that the two scenarios described would constitute violations of section 805-a of the General Municipal Law which provides as follows:
 1. No municipal officer or employee shall: a. directly or indirectly, solicit any gift, or accept or receive any gift having a value of seventy-five dollars or more, whether in the form of money, service, loan, travel, entertainment, hospitality, thing or promise, or in any other form, under circumstances in which it could reasonably be inferred that the gift was intended to influence him, or could reasonably be expected to influence him, in the performance of his official duties or was intended as a reward for any official action on his part.
As stated earlier, we believe that the teacher planning and attending the Honduras trip is doing so as part of his or her duties and, therefore, would fall within the meaning of "employee" as used in section 805-a.
I note that your May 4, 1995 letter raising the following additional scenarios was supplemented through a telephone conversation on May 11, 1995. Under the second scenario, the school district would be responsible for all expenses of the staff members organizing the trips and the board of education would prohibit the staff members from receiving any emoluments from the ski area or tour organizer. We see no financial conflicts of interests under these circumstances in that the staff members would have no monetary incentive to choose a particular ski area or tour organizer.
The same would be true under the third scenario where the chaperones would be responsible for organizing the trips but under board of education directive would pay all of their expenses and would be forbidden from accepting any gratuities.
Under the fourth scenario, an official school club would pay all expenses of the chaperones organizing the trips under a board of education directive forbidding the acceptance of gratuities by the chaperones. In this case also, we see no potential for financial conflicts of interests in the selection of a ski area or tour organizer.
Fifth, a private outside organization such as the P.T.A. or Booster Club would organize the trips and cover all expenses of the chaperones. You have indicated there would be no school district involvement in this activity. Nor would the staff members receive salaries for leading the trips. In that the chaperones' involvement in these trips would be as private individuals rather than as public officials, conflict of interests standards governing public officials would not apply.
Under the sixth and final scenario, the board of education would appoint one individual to make arrangements for the trips. That individual would report back to the board, which would approve the arrangements made including any free trips offered to the chaperones. The board of education would then appoint chaperones to lead the trips. We see no conflicts of interests under these circumstances. The individual making arrangements for the trips would have no personal financial interest in the selection of a particular ski area or tour organizer.
You have indicated that you would welcome our suggestions as to arrangements that would comply with section 805-a of the General Municipal Law. The board of education could establish specifications for the trips which include free trips for the chaperones. The chaperones would then make arrangements in accordance with the specifications established by the board of education. There would be no conflicts of interests under these circumstances. The chaperones would have no personal financial interests in the selection of a particular ski area or tour organizer in that arrangements would be made strictly in accordance with the specifications established by the board of education.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE
Assistant Attorney General in Charge of Opinions